IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SUSAN MARIE CHAPMAN,                                    3:12-cv-01481-MA

                Plaintiff,                          OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

LISA R. J. PORTER
KP Law LLC
16200 S.W. Pacific Highway, Suite H-280
Portland, Oregon 97224

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

MATTHEW W. PILE
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Susan Marie Chapman, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act). See 42 U.S.C. §§ 401-434. This court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I affirm the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff filed a prior application for DIB on March 30, 2005 alleging disability beginning October 30, 2003. That claim was denied initially and upon reconsideration. After a hearing, an administrative law judge (ALJ) denied plaintiff's prior claim on February 19, 2008. The Appeals Council affirmed and plaintiff did not seek review in this court.

Plaintiff protectively filed the instant application for DIB on April 23, 2009, alleging disability due to:

> Panic and Anxiety D/O, Bulged/herniated discs, back/neck, Fluid on spine, Hole on right shoulder, Arthritis/Scoliosis, lump in hip, Migraines herniated discs in neck and back, migraine headaches, panic attacks, anxiety, fluid on spine, Right shoulder area has soft tissue problems that doctor described as "swiss cheese" which causes pain, limitations in range of motion, and weakness in right upper extremity. Panic anxiety attacks and problems throughout back.

Tr. 201 (errors in original). Her application was denied initially and upon reconsideration. A hearing was held before an

Administrative Law Judge (ALJ) on April 14, 2010, at which plaintiff was represented by counsel and testified. In addition, plaintiff's mother-in-law, Eileen Nutt, and daughter, Christein Chapman, testified at the hearing. Tr. 70-83.

On December 2, 2010, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. After the Appeals Council declined review of the ALJ's decision, plaintiff timely filed a complaint in this court.

### FACTUAL BACKGROUND

Born on March 24, 1960, plaintiff was 43 years old on the alleged onset date of disability and 50 years old on the date of the hearing. Plaintiff has a high school diploma, and past relevant work as a rating clerk, assistant office clerk, credit clerk, customer service representative, data entry clerk, janitor, and babysitter.

Plaintiff alleges her disabilities became disabling on January 20, 2004. In addition to the hearing testimony, plaintiff submitted an Adult Function Report. Tr. 222-29. Plaintiff's friends, Gil Aragon and Jo A. Guffey, as well as her husband, Aaron Chapman, submitted witness statements. Tr. 269-92.

As relevant to this case, Jae Park, M.D., one of plaintiff's treating physicians, submitted an opinion dated August 5, 2008, and a Physical Residual Functional Capacity Report dated May 21, 2009. Tr. 324, 339-40. Another of plaintiff's treating physicians, Petya

3 - OPINION AND ORDER

Gueordjeva, M.D., submitted two opinions dated January 11, 2007, one concerning plaintiff's physical limitations and the other plaintiff's mental limitations.   Tr. 293-96, 378-81.   Donna C. Wicher, Ph.D., evaluated plaintiff and submitted a Comprehensive Psychodiagnostic Evaluation dated May 1, 2009.   Tr. 325-29.   Amy Cowan, M.D., evaluated plaintiff and submitted a physical evaluation dated April 20, 2009.   Tr. 333-37.   In addition, Martin B. Lahr, M.D., reviewed plaintiff's records and submitted a Physical Residual Functional Capacity Assessment.   Tr. 369-76.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.   Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).   Each step is potentially dispositive.   The claimant bears the burden of proof at Steps One through Four.   Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).   The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform.   See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined that plaintiff did not engage in substantial gainful activity during the period between the alleged onset date, January 20, 2004, and her last date insured, March 31, 2008.   See 20 C.F.R. § 404.1571 et seq.; Tr. 26.

At Step Two, the ALJ determined that plaintiff's degenaerative disc disease of the lumbar and cervical spine, headaches, anxiety disorder, and adjustment disorder are severe impairments. See 20 C.F.R. §§ 404.1520(c); Tr. 26.

At Step Three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526; Tr. 26-28.

The ALJ found that plaintiff has the residual functional capacity (RFC) to perform light work, except that plaintiff can only occasionally climb, balance, stoop, kneel, crouch, and crawl; can only perform simple tasks involving minimal interaction with the public; and can have occasional interaction with others, although she can only perform tasks requiring minimal input from others, such as supervisors. Tr. 28-34.

At Step Four, the ALJ found that plaintiff is unable to perform any past relevant work. See 20 C.F.R. § 404.1565; Tr. 30.

At Step Five, however, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, including Small Products Assembler and Cleaner/Polisher. See 20 C.F.R. §§ 404.1569, 404.1569(a), 404.1568(d); Tr. 35-36.

Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act.

///

## ISSUES ON REVIEW

Plaintiff raises three issues on appeal.  First, plaintiff argues that the ALJ improperly rejected her testimony.  Second, plaintiff submits that the ALJ inappropriately weighed the medical testimony by improperly discrediting the opinions of Drs. Park and Cowan,[1] and gave too much weight to Dr. Lahr's opinion.  Third, plaintiff maintains that the ALJ improperly discredited the lay witness testimony.  As such, plaintiff concludes that the RFC is unsupported by substantial evidence.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's

---

[1] Although plaintiff mentions Dr. Gueordjeva in her discussion of the rejection of Dr. Park's opinions, it does not appear plaintiff assigns error to the ALJ's treatment of Dr. Gueordjeva's opinions.

decision must be upheld.  Andrews, 53 F.3d at 1039-40.  If the
evidence supports the Commissioner's conclusion, the Commissioner
must be affirmed; "the court may not substitute its judgment for
that of the Commissioner."  Edlund v. Massanari, 253 F.3d 1152,
1156 (9th Cir. 2001).

## DISCUSSION

### I.  Res Judicata

As a preliminary matter, the doctrine of res judicata
significantly affects this court's review of the ALJ's decision in
this case.  "The principles of res judicata apply to administrative
proceedings."  Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988).
Where a prior final decision of the Commissioner finds a claimant
not disabled within the meaning of the Act, the ALJ's decision is
generally conclusive as to the adjudicated period and creates a
presumption of continuing non-disability.  Id.; Stubbs-Danielson v.
Astrue, 539 F.3d 1169, 1173 (9th Cir. 2008).  The claimant has the
burden of overcoming that presumption by proving changed
circumstances indicating greater disability.  Chavez, 844 F.3d at
693.  As relevant here, a claimant may prove changed circumstances
by demonstrating an exacerbation of her impairment or "the
existence of an impairment not considered in the previous
application."  Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995).
An ALJ's determination that a claimant has failed to prove changed
circumstances is reviewed for substantial evidence.  See Schuff v.

Astrue, 327 Fed. Appx. 756, 2009 WL 1416747, at *1 (9th Cir. May 21, 2009).

A claimant must establish disability before her last date insured.  See Webb v. Barnhart, 433 F.3d 683, 690 (9th Cir. 2005). Thus, plaintiff must prove that her circumstances changed so as to rebut the presumption of continuing non-disability between the date the ALJ issued the decision denying plaintiff's prior application and the last date insured.   The prior ALJ issued his opinion on February 19, 2008 and plaintiff's last date insured was March 31, 2008.   Tr. 103, 197.   Thus, plaintiff must prove that her circumstances changed so as to indicate greater disability between February 19 and March 31, 2008.

Plaintiff argues that res judicata does not apply because the syrinx in her thoracic spine was a new impairment that was not considered in the prior adjudication.  I disagree.  While I agree that "the existence of an impairment not considered in the previous application" constitutes changed circumstances, plaintiff's syrinx was considered by the prior ALJ.  Tr. 96-97; Lester, 81 F.3d at 827.  In fact, the only imaging of plaintiff's syrinx currently in the record is that which the prior ALJ considered.   Thus, the existence of plaintiff's syrinx is not, by itself, a changed circumstance.[2]

---

[2] Plaintiff also argues that alleged errors by counsel after the denial of her prior application bar the application of res

Plaintiff's burden, then, was to demonstrate that her impairments worsened between February 19, 2008 and March 31, 2008 such that they were indicative of greater disability. The ALJ concluded that plaintiff failed to carry that burden. Tr. 24. As discussed below, I find that the ALJ's conclusion in this respect is supported by substantial evidence, and accordingly affirm.

## II. **Plaintiff's Testimony**

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. Id. at 1281.

If an ALJ finds that the claimant's testimony regarding her subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan v. Apfel, 169 F.3d 595, 599 (9th Cir. 1999).

judicata to this application. This argument is without merit. Administrative res judicata may not apply if a claimant was *not represented* by counsel in the prior hearing. Lester, 81 F.3d at 827-28. Plaintiff was represented by counsel in her prior proceeding.

In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the November 16, 2010 hearing, consistently speaking in the present tense, plaintiff testified that she can only stand for between 15 and 20 minutes, and can sit for approximately 20 minutes at a time. Tr. 48. Plaintiff stated that she can only walk one-to-two blocks before having to squat or bend over. Tr. 47. Plaintiff reported that she has severe migraine headaches that require shots twice per month that can last from a few hours up to a week. Tr. 49. Plaintiff testified that her left shoulder problems have caused her to stop using her left arm because she cannot lift it past her shoulder, straighten it, or lay on it. Tr. 50-51. Plaintiff reported that a bulged or herniated disc in her neck limits her ability to turn her head laterally and, to a lesser extent, look up or down. Tr. 51-52. Plaintiff testified that she has debilitating panic attacks three to four times per week that can last from one to three hours, and has been suffering from such attacks since at least 2000. Tr. 53-54. Plaintiff testified that

her conditions have worsened since February of 2008, causing greater pain, anxiety, and panic. Tr. 60-61.

As to her daily activities, plaintiff testified that she only performs 25 to 30 percent of the household chores, and spends three to five hours per day reclining. Tr. 62. Plaintiff reported that she can stay in a crouching position for one or two minutes, can crawl for up to five minutes, but cannot bend or stoop without significant pain. Tr. 63-64. Plaintiff stated that she does not like to be among crowds, and has difficulty completing tasks in a timely manner. Tr. 65-66. In addition, plaintiff stated that she has difficulty with her memory such that she cannot follow the plot of a movie, and often cannot recall what took place five minutes in the past. Tr. 67. Plaintiff concluded that her pain is so severe that she is unable to function 50 percent of the time. Tr. 69.

In an Adult Function Report completed June 18, 2009, plaintiff reported that in a typical day she walks with her daughter part of the way to school, returns home to lie down, walks the dog for a block-and-a-half two to three times per day, puts dishes in the washer, watches television, and cooks simple meals. Tr. 222. Plaintiff reported that she feeds, walks, and bathes her dog, albeit with her daughter's help. Tr. 223. Plaintiff stated that she does "extremely minimal cleaning or housework" and does no yard work. Tr. 224. Although she speaks with friends and family on the telephone, plaintiff reported she only visits people in person

about once every four months.  Tr. 226.  When plaintiff does leave
the house, she reported she needs her daughter or husband to go
with her.  Id.  Plaintiff reported that she has difficulty
following written and spoken instructions, and becomes overwhelmed
very easily.  Tr. 227.  Plaintiff checked that her conditions
affect her abilities to lift, squat, bend, stand, reach, walk, sit,
kneel, climb stairs, remember, complete tasks, concentrate,
understand, and follow instructions.  Id.  On the whole, plaintiff
reported that "[within] just the last 12 month [sic] my physical
and mental condition has gotten even worse."  Tr. 229.

     The ALJ rejected plaintiff's testimony because plaintiff's
allegations of substantial functional limitations are inconsistent
with record evidence, including plaintiff's activities of daily
living; plaintiff has only received conservative, routine medical
treatment; and plaintiff's testimony does not significantly differ
from her testimony in the proceedings concerning her prior
application.  Tr. 30-31.

     Plaintiff's testimony of significant functional limitations is
inconsistent with other record evidence.  As the ALJ noted,
plaintiff told Dr. Cowan that "[s]he can do all of her own
activities of daily living and laundry, but she does need help with
deep housecleaning."  Tr. 334.  Similarly, although plaintiff
described somewhat lesser activities of daily living to Dr. Wicher,
she still reported that during the day she "'putzes' around the

12 - OPINION AND ORDER

house, trying to do dishes and other household chores," although she is behind on them. Tr. 327. The ALJ reasonably concluded these varying statements were inconsistent with plaintiff's testimony that she does "extreme [sic] minimal cleaning or housework due to pain/fatigue." Tr. 224. As the ALJ also noted, at a September 3, 2010 appointment with Dr. Park, plaintiff reported she had "[j]ust [come] from the beach [and] walked a lot," although that was followed by a note that simply stated "[m]ore painful." Tr. 407. Nonetheless, the ALJ could reasonably conclude that this was inconsistent with plaintiff's testimony of significant walking limitations. Moreover, plaintiff's allegations of significant memory problems, such that she cannot at times remember "five minutes from now," are contradicted by Dr. Wicher's finding that "no gross deficits in memory or concentration were noted." Tr. 67, 327. The ALJ properly cited inconsistency between plaintiff's testimony and other record evidence, including activities of daily living, as a basis for discrediting her testimony.

The ALJ also rejected plaintiff's testimony because her course of treatment was routine and conservative. A conservative course of treatment is a proper basis on which to reject a claimant's testimony of severe impairment. Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007). As the ALJ noted, throughout the medical documentation in the record, plaintiff is consistently treated

exclusively with pain medication.  There is no discussion of more
aggressive treatment.  In fact, as Dr. Park noted, plaintiff "was
evaluated by a neurologist who does not think any interventions
[are] needed at this time." Tr. 324.  As the ALJ also pointed out,
while plaintiff testified that she received injections for
migraines, there does not appear to be any medical documentation in
the record of such treatment.  Tr. 31.[3]  The ALJ reasonably cited
a routine, conservative course of treatment as a basis for
rejecting plaintiff's testimony.

Finally, the ALJ pointed out that plaintiff's testimony was
not evidence of changed circumstances because it was largely the
same as the testimony she provided in the prior proceeding, and
thus was not directly relevant to whether plaintiff's condition
worsened during the relevant period.  Indeed, as the ALJ pointed
out, much of plaintiff's testimony appears similar to that which
the prior ALJ summarized in her decision.  See tr. 94.  In
addition, plaintiff's June 18, 2009 Function Report states that her
condition had worsened "[within] just the last 12 month [sic]," all
of which was after the last date insured.  Tr. 229.  The ALJ
properly rejected plaintiff's testimony because it largely did not
relate to the relevant period for determining changed
circumstances.  In sum, I conclude that the ALJ cited clear and

---

[3] I note, however, that many of plaintiff's treatment notes
are illegibly handwritten.

convincing reasons for discrediting plaintiff's testimony as relevant to establishing changed circumstances during the relevant period. The ALJ properly discredited plaintiff's testimony.

### III. **Medical Testimony**

Plaintiff next argues that the ALJ erroneously weighed the medical testimony. The Commissioner must provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician. Lester, 81 F.3d at 830-31. Where a physician's opinion is contradicted by that of another physician, the ALJ may reject the physician's opinion by providing specific and legitimate reasons supported by substantial evidence in the record. Id. "'The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)). "'Where . . . the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.'" Id. (quoting Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003)). The ALJ is responsible for translating the claimant's medical conditions into functional limitations in the RFC. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). Ultimately, the RFC is sufficient if

it is "consistent with restrictions identified in the medical testimony." Id.

**A.  Dr. Park**

Dr. Park submitted three opinions. First, on August 5, 2008, Dr. Park submitted a brief letter in which he listed plaintiff's diagnoses, stated that plaintiff's limitations appear to be worsening, and that plaintiff was evaluated by a neurologist but that no intervention was necessary. Tr. 324. Second, Dr. Park completed a Physical Residual Functional Capacity Report on May 21, 2009. Dr. Park opined that plaintiff could only lift less than 10 pounds occasionally, and nothing at all frequently; could only sit or stand for 30 minutes per day; could only occasionally climb, and never stoop, kneel, crouch, or crawl; that plaintiff could never handle or engage in gross manipulation, and only occasionally reach in all directions; should avoid all exposure to extreme cold and hazards, and avoid occasional exposure to extreme heat, humidity, noise, and vibration. Tr. 339-40. Dr. Park listed "vaginal bleed, syrinx, spinal stenosis, and disc hernia scoliosis as plaintiff's diagnoses and opined that plaintiff's condition would last indefinitely. Tr. 340. Finally, Dr. Park submitted another short letter on March 3, 2011 that largely mirrored his August 5, 2008 letter. Tr. 412.

The ALJ gave Dr. Park's opinions limited weight because they did not specifically relate to the relevant time period, were not

supported by objective medical evidence, and were inconsistent with plaintiff's self-report of activities. Tr. 31-32. Dr. Park's opinion and Residual Functional Capacity Report were inconsistent with the limitations found by examining physician, Dr. Cowan, and reviewing physician, Dr. Lahr. Thus, the ALJ was required to provide specific and legitimate reasons, supported by substantial record evidence, to reject Dr. Park's opinion. See Lester, 81 F.3d at 830-31. I conclude that the ALJ's reasons for rejecting Dr. Park's opinions surpass this standard.

The ALJ's finding that Dr. Park's opinions did not specifically address the relevant period is supported by substantial evidence and is a compelling reason why Dr. Park's opinions do not establish changed circumstances. In his first opinion, Dr. Park referred to an evaluation by a neurologist, but the only neurological evaluation in the record took place on April 4, 2007, almost one year before the relevant period. Tr. 297. In addition, Dr. Park's second opinion was completed on May 21, 2009, more than one year after the relevant period. Tr. 339. Finally, Dr. Park's third opinion was written on March 3, 2011, three years after the relevant period. Tr. 412. None of Dr. Park's opinions make reference to the relevant period or any changes that took place between February and March of 2008. The ALJ appropriately cited Dr. Park's failure to specifically address the relevant

period as a reason why Dr. Park's opinions do not establish changed circumstances.

The ALJ also discredited Dr. Park's opinions because they were not supported by objective medical evidence.    Notably, in his August 5, 2008 opinion, Dr. Park opined that plaintiff had a disc hernia at L4-5, but the only lumbar spine imaging in the record, a March 28, 2009 exam, revealed an "unremarkable lumbar spine," with only "[m]ild endplate irregularity . . . of the L1 through L4 vertebral bodies." Tr. 338.    In addition, Dr. Park noted "spinal stenosis C5-6 level," but the only imaging in the record found only "mild impingement" at C5-6.    Tr. 307-08.    In his RFC report, Dr. Park noted that plaintiff could never engage in handling and gross manipulation.    Tr. 340.    Yet, during her examination, Dr. Cowan found no limitation in plaintiff's grasping or gross motor skills.    Tr. 336-37.    The ALJ reasonably discredited Dr. Park's opinion because it was unsupported by objective evidence.

Finally, the ALJ discredited Dr. Park's opinion because it was inconsistent with plaintiff's activities of daily living.    As the ALJ noted, Dr. Park opined that plaintiff could never crouch, despite her testimony that she can crouch provided she does not have to stay in a crouching position for an extended period of time.    Tr. 63-64, 339.    In addition, Dr. Park's opinion that plaintiff has severe limitations in walking is in tension with plaintiff's report to him that she "walked a lot" at the beach.

Compare tr. 324, 339, 412, with tr. 407.  The ALJ reasonably cited
inconsistency between Dr. Park's opined limitations and plaintiff's
self-reported activities of daily living in discrediting Dr. Park's
opinion.  In sum, I conclude that the ALJ cited specific and
legitimate reasons, supported by substantial record evidence to
reject Dr. Park's opinions.[4]

### B.    Dr. Cowan

Plaintiff next argues that the ALJ erred in partially
rejecting Dr. Cowan's opinion.  Dr. Cowan evaluated plaintiff on
April 20, 2009, more than one year after the relevant period.  Dr.
Cowan opined that plaintiff could sit for up to four hours, and
stand and walk for up to four hours in an eight-hour day; could
lift 20 pounds occasionally and 10 pounds frequently; and was
limited to occasional stooping, crouching, or crawling.  Tr. 337.
The ALJ gave Dr. Cowan's opinion some weight, and incorporated all
of Dr. Cowan's opined functional limitations into the RFC except

_____

[4] The ALJ additionally found that Dr. Park failed to list
the specific symptoms and limitations associated with plaintiff's
syrinx.  Plaintiff argues that this was an invalid basis to
reject Dr. Park's opinion because the ALJ failed to fully develop
the record in this respect.  The mere fact that a more detailed
opinion from Dr. Park may have provided additional support to
plaintiff's case does not trigger the ALJ's duty to develop the
record, especially where, as here, plaintiff was represented by
counsel.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th
Cir. 2001).  There is ample evidence of plaintiff's back
limitations in the record as a whole.  In any event, I find that
the ALJ's reasons for rejecting Dr. Park's opinions are
sufficient independent of this reason.

the four-hour limitation on sitting, standing, and walking.   Tr. 28.   Because Dr. Cowan's opinion as to the sitting and standing limitations was contradicted by Dr. Lahr, the ALJ was required to cite specific and legitimate reasons, supported by substantial record evidence, to reject Dr. Cowan's opinion in this respect. See Lester, 81 F.3d at 830-31.

Along with much of the rest of the opinion evidence, the ALJ partially rejected Dr. Cowan's opinion because it did not cover the period relevant for the disability determination.   Tr. 31.   Dr. Cowan's evaluation took place more than one year after the relevant period.   The ALJ reasonably concluded that Dr. Cowan's findings on examination bear a limited relationship to the determination of whether plaintiff's condition changed between February and March of 2008.   Additionally, while Dr. Cowan appears to have reviewed some records provided by plaintiff, the only records cited predate the relevant period.   Tr. 333-34.   As such, the ALJ properly partially rejected Dr. Cowan's opinion as to sitting, standing, and walking limitations because it did not cover the relevant period.   This is a specific and legitimate reason, supported by substantial evidence, to partially reject Dr. Cowan's opinion.

C.   **Dr. Lahr**

Plaintiff also argues that the ALJ gave Dr. Lahr too much weight in adopting Dr. Lahr's RFC.   Although the opinions of treating and examining physicians are generally given greater

weight than those of reviewing physicians, because the ALJ properly
discredited the opinions of Drs. Park and Cowan, at least to the
extent inconsistent with Dr. Lahr, the ALJ could reasonably rely on
Dr. Lahr's opinion.[5]  See Chaudhry v. Astrue, 688 F.3d 661, 671
(9th Cir. 2012).  I conclude that the ALJ appropriately weighed the
medical testimony with respect to whether plaintiff demonstrated
changed circumstances between the date of the last ALJ opinion and
plaintiff's last date insured.

**IV.  Lay Testimony**

Plaintiff next argues that the ALJ improperly rejected the lay
testimony of Gil Aragon and Jo Guffey, plaintiff's friends; Aaron
Chapman, plaintiff's husband; plaintiff's daughter Christein
Chapman; and plaintiff's mother-in-law, Eileen Nutt. Lay testimony
regarding a claimant's symptoms or how an impairment affects her
ability to work is competent evidence that an ALJ must take into
account.  Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).
To discount lay witness testimony, the ALJ must give reasons that
are germane to the witness.  Id.

---

[5] Plaintiff's argument that Dr. Lahr mischaracterized the
record is without merit.  Indeed, plaintiff's characterization of
Dr. Lahr's opinion was inaccurate.  For example, Dr. Lahr did not
minimize plaintiff's syrinx as "fluid on the spine," as plaintiff
argues.  Pl's Brief at 23.  Rather, Dr. Lahr's reference to
"fluid on the spine" was a verbatim reference to plaintiff's own
allegations.  Compare Tr. 374, with Tr. 201.  Moreover, a
reviewing physician need not summarize every piece of evidence in
the record, especially where, as here, much of that evidence
predates the period relevant to establishing disability.

### A.  Mr. Aragon

Mr. Aragon submitted a statement reporting that he saw plaintiff two to three times per week walking in their neighborhood. Mr. Aragon stated that he frequently sees plaintiff walking her dog, and that she appears depressed and often tearful. Tr. 270. Mr. Aragon reported that plaintiff would tell her that she was having problems with pain and that walking the dog was painful. Id. The ALJ partially discredited Mr. Aragon's statement because it was written two-and-a-half years after the relevant period. Tr. 33. I conclude that this is a germane reason to reject Mr. Aragon's statement. There is nothing in Mr. Aragon's statement that suggests that plaintiff's condition worsened or changed between February and March of 2008. Moreover, the fact that it was written in September of 2010 makes it unlikely that Mr. Aragon's comments regarded the relevant period as opposed to any of the hundreds of other occasions he reports seeing plaintiff between 2006 and 2010. The ALJ cited sufficient reasons for rejecting Mr. Aragon's statement.

### B.  Ms. Guffey

Ms. Guffey submitted a statement reporting that she sees plaintiff two to four times per week in their neighborhood. Ms. Guffey reported that when plaintiff walks her dog she walks very carefully and sometimes with a limp. Tr. 278. She stated that plaintiff cannot stand long, which often makes visits short because

plaintiff needs to sit down.  Id.  In addition, Ms. Guffey reported
that plaintiff sometimes attends church with her, but that it is
difficult for plaintiff to sit for long periods of time.  Id.  The
ALJ discredited Ms. Guffey's opinion for the same reason as Mr.
Aragon's.  Tr. 34.  I conclude that the ALJ's rationale applies
with equal force to Ms. Guffey and accordingly find that he cited
reasons germane to Ms. Guffey's testimony to reject her statement.

   **C.   Mr. Chapman**

   Mr. Chapman, plaintiff's husband, submitted a statement
written on November 14, 2010, attesting to his wife's functional
limitations.  Mr. Chapman attested that plaintiff's pain and
anxiety interfere with virtually all aspects of her daily life.
Tr. 286.  Mr. Chapman reported that plaintiff is unable to
concentrate enough to complete tasks, and has disrupted sleep due
to the discomfort caused by her conditions.  Tr. 287-90.  Mr.
Chapman stated that he and their daughter have to help dress
plaintiff due to her back pain.  Tr. 292.  The ALJ rejected Mr.
Chapman's statement because it was written in the present tense in
November of 2010, suggesting it did not relate to changed
circumstances between February and March of 2008, and was
inconsistent with the testimony of their daughter with respect to
plaintiff's left arm limitations.  Tr. 34.  I conclude that these
reasons constitute germane reasons to reject Mr. Chapman's
statement.

The present nature of Mr. Chapman's statements, as well as the fact that it was written two-and-a-half years after the relevant period are compelling reasons to find that Mr. Chapman's statements do not establish changed circumstances during the relevant period. Moreover, there is nothing in Mr. Chapman's report that specifically relates the stated limitations to February and March of 2008.   The ALJ also reasonably found that Mr. Chapman's statement about plaintiff's left arm limitations was contradicted by his daughter's testimony that such limitations began much more recently.  Compare Tr. 286 with Tr. 79.  The ALJ properly rejected Mr. Chapman's statement.

### D.   Ms. Chapman

Plaintiff's daughter testified at the hearing that during the relevant period, plaintiff could only walk slowly for one or two blocks.  Tr. 79.  Ms. Chapman stated that her mother has problems with her left arm that have only developed recently.  Id.  Ms. Chapman testified that her mother seemed to be in pain eighty percent of the time, became fatigued easily, and could only perform household tasks for fifteen minutes before needing to sit and rest. Tr. 80.  As to mental impairments, Ms. Chapman testified that her mother has crying spells four to five times per month, has memory problems, and experiences panic attacks three to four times per week.  Tr. 81.  The ALJ accepted Ms. Chapman's testimony insofar as it confirmed that plaintiff has pain and mental health problems,

24 - OPINION AND ORDER

but partially discredited it because it was given two-and-a-half years after the relevant period.  I conclude this was a germane reason for partially discrediting Ms. Chapman's testimony.

The ALJ could reasonably conclude that the fact that Ms. Chapman was testifying in November of 2010 about a relatively short period in February and March of 2008 calls into question the accuracy of her recollection.  Additionally, while plaintiff's counsel asked some of the questions to Ms. Chapman so as to target her answers toward the relevant period, there is nothing in her testimony indicating that plaintiff's condition changed during that period.  The ALJ's partial rejection of Ms. Chapman's testimony was proper.

### E.    Ms. Nutt

Ms. Nutt, plaintiff's mother-in-law, testified at the hearing that she saw plaintiff five to six times per week during the relevant period. Tr. 71. Ms. Nutt testified that plaintiff's back problems limited her ability to walk more than one block, that plaintiff has problems with an arm - although she could not remember which arm - and was in pain around eighty percent of the time.  Tr. 72.  Ms. Nutt reported that plaintiff became fatigued easily while performing household chores, had problems with anxiety, and frequently experienced crying spells. Tr. 73-74. Ms. Nutt stated that plaintiff had memory problems, experienced panic attacks, and would have trouble sitting through church.  Tr. 75.

The ALJ rejected Ms. Nutt's testimony because it seemed to describe limitations that postdated the relevant period.  Tr. 34.

Indeed, Ms. Nutt's testimony about arm limitations that have been going on "for a long time" is seemingly contradicted by plaintiff's daughter's testimony that plaintiff's left arm problems are more recent.  Compare Tr. 72 with Tr. 79.  Moreover, although plaintiff's lawyer geared his questions to the relevant period, nothing in Ms. Nutt's answers suggested that plaintiff's conditions changed during that period.  Considering the brevity of the relevant period and the two-and-a-half years that elapsed between the last date insured and the hearing, it was reasonable for the ALJ to conclude that Ms. Nutt's testimony did not refer to changed limitations during February and March of 2008.  The ALJ properly discredited Ms. Nutt's testimony.  The ALJ's consideration of the lay testimony was not error.

V.   **The RFC**

Because I have found the ALJ properly discredited plaintiff's testimony, permissibly weighed the medical testimony, and appropriately weighed the lay testimony, I conclude that the RFC is supported by substantial evidence.  Simply put, plaintiff submitted very little - if any - evidence of changed circumstances between the date of the prior ALJ decision and plaintiff's last date insured.  I accordingly conclude that the ALJ's finding that plaintiff did not demonstrate changed circumstances during the

relevant period is supported by substantial evidence.  Therefore, the ALJ appropriately applied the principles of res judicata to the prior opinion, and was entitled to rely on the prior nondisability finding.

**CONCLUSION**

For the foregoing reasons, the decision of the ALJ is AFFIRMED.

IT IS SO ORDERED.

DATED this _15_ day of July, 2013.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge